IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

WASEEM DAKER,

    Petitioner,

v.

WARDEN BRIAN ADAMS,

    Respondent.

CIVIL ACTION NO.: 6:21-cv-40

## ORDER AND REPORT AND RECOMMENDATION

Petitioner Waseem Daker ("Daker") filed a 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus in the Middle District of Georgia on March 10, 2020, which was later amended as a result of consolidation of two of his habeas petitions in that District. Docs. 1, 5. Respondent has filed a Motion to Dismiss, doc. 18, to which Daker has responded, as supplemented. Docs. 23, 29. Daker has also filed Motions to Expedite Review. Docs. 28, 30. For the reasons which follow, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DENY as moot** Daker's Petition, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. I also **RECOMMEND** the Court **DENY** Daker *in forma pauperis* status on appeal and a Certificate of Appealability. I **GRANT** Daker's Motions to Expedite, but only to the extent this Report and Recommendation is being issued. Docs. 28, 30.

## BACKGROUND

Daker is an inmate incarcerated with the Georgia Department of Corrections. He is currently serving a life sentence, plus 47.5 years, in prison. Doc. 1 at 1, 9. During the course of his incarceration, Daker has been housed at various Georgia Department of Corrections'

facilities around the State of Georgia, and his moves between these facilities have caused him to move from one federal district within Georgia to another.[1]  Id. at 9.  Relevant to this action, Daker is Muslim and asserts his religion requires him to grow a beard at least three inches in length.  Id. at 39.  However, the Georgia Department of Corrections' grooming policy prohibits inmates from growing beards in excess of one-half inch in length, even for religious reasons.  Therefore, at times, Daker's attempts to grow a longer beard have resulted in forced shavings.  See, e.g., id. at 42.  Daker has allegedly been disciplined for failing to comply with grooming restrictions and for altercations which have occurred in the course of the forced shavings.  Daker contends he has been placed in administrative segregation—specifically, the Tier II program—because he refuses to comply with the grooming policy.  This case—along with several others filed by Daker—concerns Daker's efforts to be released from Tier II and placed back in general population.  Doc. 1.

## I.     Daker's Petition at Macon State Prison (Daker I in the Middle District)

Daker filed a § 2254 petition while in Macon State Prison.  See Doc. 4 (discussing Case Number 5:18-cv-171 in the Middle District of Georgia).  In his Amended Petition, as relevant here, Daker asserted his placement on Tier II at Macon State Prison on April 19, 2018, violated his right to due process.  Doc. 5 at 39.  Daker also challenged his 90-day reviews on September 10 and December 7, 2018, at Macon State Prison, as well as his placement on Tier II at Valdosta State Prison on December 28, 2018, after his transfer to that facility.  Id. at 40–43.  The United States District Court for the Middle District of Georgia dismissed Daker's petition, and he

---

[1] Daker was housed at Macon State Prison when he filed Daker I in the Middle District of Georgia on May 17, 2018.  Daker was then transferred to Valdosta State Prison on December 26, 2018.  Doc. 4 at 1.  On March 10, 2020, Daker filed Daker II in the Middle District of Georgia while he was housed at Valdosta State Prison.  Id. at 2.  Daker has been housed at Smith State Prison, in the Southern District of Georgia, since October 2020 and has remained at that facility through the date of this Report.  Doc. 12 at 2.

2

appealed this decision to the Eleventh Circuit Court of Appeals. Doc. 4. The Eleventh Circuit affirmed the Middle District of Georgia's dismissal except for the court's conclusion Daker could not pursue his procedural due process claim in a § 2254 petition. Id. at 1. The Eleventh Circuit remanded the case for further consideration of that claims. Id. Because the contentions in this petition were substantially similar to the contentions in another petition filed in the Middle District of Georgia (described below), the Honorable Marc Treadwell consolidated the two petitions, ordered both petitions to be considered in this case, and closed the other pending case. Id. at 3.

## II.     Daker's Petition at Valdosta State Prison (Daker II in the Middle District)

In his second petition (original Case Number 7:20-cv-43), which was filed when he was housed at Valdosta State Prison, Daker contends he was denied due process as a result of placement on Tier II and the subsequent 90-day review of his placement at Macon State Prison on December 7, 2018. Doc. 1 at 49. Daker also contends his initial placement on Tier II on December 28, 2018, and the 90-day reviews at Valdosta State Prison on March 14, 2019, June 20, 2019, September 24, 2019, and December 27, 2019, violated his rights to due process. Id. at 49–54. Daker asserts he was not given advance, written notice prior to the decisions to place him on Tier II and to keep him on Tier II after the 90-day reviews. Id. at 49–52. In addition, Daker asserts he was not allowed to call witnesses or present evidence at his "hearings," which he contends were not hearings at all. Id. As relief, Daker seeks release from administrative segregation (i.e., Tier II). Id. at 54.[2]

---

[2]     United States Magistrate Judge Charles Weigle ordered Daker to supplement his consolidated petitions to include information on exhaustion. Doc. 7. Daker responded to this order and asserted he exhausted his state remedies. Doc. 11. Respondent has not raised any challenge to Daker's exhaustion at this time. Since exhaustion is not before this Court at this time, the Court need not discuss the issue further.

3

Magistrate Judge Charles Weigle recommended Daker's consolidated petition be dismissed without prejudice.  Doc. 12.  Judge Weigle noted Daker's previous filing, which the Middle District of Georgia court found was barred under 28 U.S.C. § 1915(g)'s three-strikes bar.  Id. at 2.  Judge Weigle noted the Eleventh Circuit upheld a substantial part of the dismissal but remanded the matter back to the Middle District of Georgia based on Daker's request for release from administrative segregation.  Judge Weigle noted Daker filed new pleadings since the remand and "persist[ed] on referencing" 42 U.S.C. § 1983 and § 2254, "thereby continuing to flout the Eleventh Circuit's rule of 'mutual exclusivity.'"  Id.  Judge Weigle observed Daker's request for release from administrative segregation was his sole claim in his consolidated action and Daker had been transferred to Smith State Prison since he filed his petitions with the Middle District of Georgia.  Judge Weigle also observed the Southern District of Georgia would be the proper forum for resolving mootness concerns due to Daker's transfer here, but recommended Daker's consolidated action be dismissed rather than transferred to this District for various reasons.  Id. at 3.  Daker filed objections to this report and recommendation, doc. 13, and Judge Treadwell addressed the objections and the report and recommendation.  Doc. 14.

Judge Treadwell provided a brief procedural background for Daker, beginning with his 2012 conviction and concluding with his 2020 transfer to Smith State Prison.  Id. at 2.  Judge Treadwell noted Daker had four habeas causes of action in which he raised procedural due process claims—the two Middle District of Georgia consolidated cases and two cases in this District, Daker v. Allen, 6:17-cv-23, and Daker v. Adams, 6:20-cv-115.  Id. at 2–3.  The 2017 case in this District has concluded, whereas the 2020 in this District case remains pending.  Daker v. Allen, 6:17-cv-23 (case closed); Daker v. Adams, 6:20-cv-115 (filed Nov. 30, 2020).  Judge Treadwell stated these four lawsuits are duplicative because the only available remedy is

Daker's release from Tier II.  Doc. 14 at 3.  Judge Treadwell rejected the report and recommendation, finding it appropriate to transfer Daker's consolidated Middle District petitions to the Southern District because this District could better resolve mootness concerns and to assess the relative merits of Daker's entitlement to habeas relief.[3]  Id. at 6.

In response to Judge Treadwell's order, Respondent filed the instant Motion to Dismiss and contends Daker's § 2254 Petition is moot.  Doc. 18.  Daker filed a Response.  Doc. 23.  Judge Treadwell transferred Daker's consolidated actions from the Middle District of Georgia to this District.  Docs. 24, 25.

Despite this complicated procedural history, the grounds Daker asserts in this action for habeas relief are fairly narrow.  Daker contends his right to procedural due process has been violated based on his placement on Tier II at Smith State Prison as discipline for not following the Georgia Department of Corrections' grooming policy and his continued placement in segregation after he has had alleged 90-day hearings.  Doc. 1; Doc. 12 at 4.  Daker seeks release from Tier II.  Docs. 1, 5.  In his Motion to Dismiss, now before the Court, Respondent contends Daker's claim is moot because he was released from Tier II in January of 2021.  Doc. 18.  Mootness is the only ground for dismissal Respondent raises.  Id.  Respondent's Motion to Dismiss is ripe for review.

---

[3] On appeal of the dismissal of the first petition Daker filed with the Middle District of Georgia, the Eleventh Circuit determined that court erred in concluding Daker could not challenge disciplinary segregation in a § 2254 proceeding and remanded for further proceedings as to this procedural due process claim only.  Daker v. Warden, 805 F. App'x 648, 650–51 (11th Cir. 2020).  However, the Eleventh Circuit found no error in the district court's dismissal of Daker's First and Eighth Amendment claims, as those claims are cognizable under § 1983 and not under the "mutually exclusive remedy of § 2254."  Id. at 651.  Accordingly, any claims not relating to Daker's due process claims, and not seeking release from administrative segregation, will not be addressed in this § 2254 Petition.  This Court has already so informed Daker on a previous occasion it will not entertain § 1983 claims in a § 2254 proceeding.  R. & R. and Order, Daker v. Allen, 6:17-cv-23 (S.D. Ga. Mar. 3 and Mar. 24, 2020), ECF Nos. 246, 252.  The Eleventh Circuit denied Daker a certificate of appealability in that case.  Id. at ECF Nos. 295, 296.

Before considering Respondent's Motion to Dismiss, two other facts should be addressed. First, in November 2020, Daker filed a separate § 2254 habeas petition in this District. Daker v. Adams, 6:20-cv-115, ECF No.. 1. At that time, Daker had been transferred to Smith State Prison (in the Southern District of Georgia) and was being held in Tier II at that facility. In that petition, Daker contends, among other things, he was placed in Tier II and held in Tier II in violation of his procedural due process rights. Id. at 62. His allegations in that case concern his initial placement on Tier II at Valdosta State Prison in December 2018 through his then-current placement in Tier II at Smith State Prison in October 2020. Id. at 60–62. Daker's petition in Daker v. Adams, 6:20-cv-115, is currently pending. To be clear, the grounds asserted in this action are almost entirely duplicated in Daker's more recent petition filed in Daker v. Adams, 6:20-cv-115, which remains pending.

Second, Daker filed a supplement to his Petition in this action, doc. 29, and in Daker v. Adams, 6:20-cv-115, doc. 4. In that supplement, Daker contends, although he was released from Tier II at Smith State Prison in January 2021 and remained in general population for nearly a year, in December 2021, he was placed in "segregation/solitary confinement." Doc. 29 at 1. Importantly, Daker does not allege he was assigned to Tier II at this time. Daker contends Respondent placed him in solitary confinement in retaliation for a motion Daker filed in another pending case. Id. at 2. Daker contends he was not given any procedural due process protections before being placed in solitary confinement. Id. Daker argues because he was recently placed in solitary confinement at Smith State Prison, his Petition in this action is not moot.

**DISCUSSION**

I.   **Whether Daker's Petition Is Moot**

Respondent contends Daker's Petition should be dismissed as moot, as he has already received his requested relief. Doc. 18 at 2. Specifically, Respondent states Daker was moved from administrative segregation and placed in general population at Smith State Prison in January 2021. Id.; Doc. 19-1 at 2, 4. Thus, Respondent maintains this Court can provide no requested relief to Daker. Doc. 18-1 at 3.

Daker responds his Petition is not moot because he was not released from segregation unconditionally. Instead, Daker contends he was released from segregation on the condition he surrender his First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA") free exercise claims by shaving his beard in compliance with the Georgia Department of Corrections' grooming policy. Doc. 23 at 3. Daker asserts he will be placed back on Tier II segregation if he chooses to exercise his religious rights. Id. at 3, 5. In addition, Daker alleges his Petition qualifies for the "capable of repetition, yet evading review" exception to the mootness doctrine because he has been in segregation off and on during his incarceration and has been specifically threatened with a return to Tier II segregation if he fails to shave his beard in compliance with Department of Corrections' policy. Id. at 7.

Article III of the Constitution "extends the jurisdiction of federal courts to only 'Cases' and 'Controversies.'" Strickland v. Alexander, 772 F.3d 876, 882 (11th Cir. 2014). This "case-or-controversy restriction imposes" what is "generally referred to as 'justiciability' limitations." Id. There are "three strands of justiciability doctrine—standing, ripeness, and mootness—that go to the heart of the Article III case or controversy requirement." Harrell v. The Fla. Bar, 608 F.3d 1241, 1247 (11th Cir. 2010) (internal quotation marks and alterations omitted). Regarding

the mootness strand, the United States Supreme Court has made clear "a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992) (internal citation omitted). Accordingly, "[a]n issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." Friends of Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1216 (11th Cir. 2009) (internal quotation marks omitted). Questions of justiciability are not answered "simply by looking to the state of affairs at the time the suit was filed. Rather, the Supreme Court has made clear the controversy 'must be extant at all stages of review, not merely at the time the complaint is filed.'" Christian Coal. of Fla., Inc. v. United States, 662 F.3d 1182, 1189–90 (11th Cir. 2011) (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)). "Events which occur subsequent to the filing of a petition may render the matter moot." Johnson v. Glover, No. 1:04-CV-413, 2006 WL 1008986, at *1 (M.D. Ala. Apr. 18, 2006) (citing Nat'l Black Police Ass'n v. District of Columbia, 108 F.3d 346, 350 (D.C. Cir. 1997)).

Here, the only habeas relief Daker seeks is to be released from Tier II. Doc. 1 at 54; Doc. 5 at 44. However, Daker received his requested relief and was in general population at Smith State Prison from January 2021 to December 2021. Doc. 18 at 2; Doc. 18-1 at 2–3; Doc. 19-1 at 2, 4. Daker's Petition is moot on its face. See, e.g., Medberry v. Crosby, 351 F.3d 1049, 1053–54 (11th Cir 2003) (finding where petitioner already completed his disciplinary term and been released from disciplinary confinement at the time he filed his § 2254 petition, his petition was moot when filed and could not "be revived by collateral consequences[]") (citation omitted); Cole v. Jones, Case No. 5:18cv203, 2018 WL 7436964, at *1 (N.D. Fla. Nov. 27, 2018) ("Where a prisoner has completed an imposed term of administrative or disciplinary

confinement before he files his habeas petition, the petition is considered moot when filed and cannot be revived by collateral consequences."); Reynolds v. St. Lawrence, Case No. CV415-207, 2015 WL 5037893, at *3 (S.D. Ga. Aug. 25, 2015) (recognizing disciplinary sentence completed and petitioner would have to show he suffered from collateral consequence to prevent mootness finding and concluding this Court unable to find any case challenging already-expired disciplinary sanction met case-or-controversy requirement). While Daker's Petition may not have been moot when he initially filed it in the Middle District, events occurring after he filed his Petition have rendered it moot. That is, Daker was released to general population at Smith State Prison and continued to be in general population for nearly a year's time, with no contention his due process rights were violated during that time or that his recent placement in solitary confinement as retaliation is related to his placement in Tier II for violating the grooming policy. Nonetheless, Daker, in his Response to the Motion to Dismiss, claims an exception to the mootness doctrine exists in this case.

Specifically, Daker contends his placement in segregation was not unconditional and is capable of occurring again, making his Petition not moot. The Court considers whether Daker's Petition falls under either exception to the mootness doctrine—"voluntary cessation" or "capable or repetition, yet evading review." In addition, the Court addresses Daker's "conditional release" argument.

Before reaching these arguments, however, the Court addresses Daker's Supplement. In his Supplement, Daker states he was removed from general population to segregation/solitary confinement on December 4, 2021. Doc. 30 at 1. Daker states Warden Adams removed him from the general population in retaliation for Daker's motions he filed in Daker v. Owens, Case

9

Number 6:14-cv-47.[4]  Id. at 2.  Accepting Daker's assertions as true, the reason he was placed in segregation/solitary confinement is not the same reason he was previously placed in Tier II; thus, Daker's newly asserted claims are not germane to the issues before the Court in the instant case. Moreover, Daker could not have exhausted his available remedies between the time he states he was placed in segregation—December 4, 2021—and the time he executed his Supplement—December 12, 2021.  Nothing in Daker's Supplement addresses or impacts this Court's mootness analysis.  Additionally, Daker has filed this supplement in other cases pending in this District, most notably in another habeas corpus petition—Case Number 6:20-cv-115, Doc. 4.

### A. Voluntary Cessation

"Under the 'voluntary cessation' doctrine, a defendant cannot unilaterally render a case moot by the simple expedient of voluntarily ceasing its allegedly illegal conduct after suit has been filed.  Instead, 'the voluntary cessation of challenged conduct will only moot a claim when there is no 'reasonable expectation' that the accused litigant will resume the conduct after the lawsuit is dismissed.'"  F.R. as next friend of B.C. v. Gonsoulin, No. 20-10992, 2021 WL 4259006, at *2 (11th Cir. Sept. 20, 2021) (internal citations omitted).

While Daker does not claim he is entitled to this exception to the mootness doctrine, the Court notes its existence, and Daker may contend his claim he was released from segregation

---

[4]  Daker filed Daker v. Owens, Case Number 6:14-cv-47—a § 1983 suit—several years ago in this District raising numerous challenges.  Among the claims in that case, Daker asserts a procedural due process claim based on his assignment to Tier II while at a prior institution.  That procedural due process claim is the only claim still pending in Daker v. Owens.  As a result, Daker is currently litigating this § 2254 petition and his § 1983 claim in 6:14-cv-47—both of which raise procedural challenges to his assignment to Tier II.  This would appear to violate the principle that § 1983 and § 2254 are "mutually exclusive remed[ies,]" as described in Daker, 805 F. App'x at 651.  That said, there is an apparent split in the Eleventh Circuit's unpublished guidance on the mutual exclusivity of remedies.  See Doc. 14 at 2 n.2 (collecting cases).  Regardless, the Eleventh Circuit expressly held Daker could pursue this § 2254 Petition on procedural due process grounds, and this Court must follow that directive.  See Daker, 805 F. App'x at 651.  Furthermore, Defendants in Daker v. Owens, Case Number 6:14-cv-47, have not challenged Daker's ability to pursue the § 1983 claim in that case while also pursuing this § 2254 Petition.

10

conditionally falls within this exception. It does not. Under Daker's version of events, he was released from segregation based on his own actions (i.e., complying with the Georgia Department of Corrections' grooming policy), not Respondent's voluntary cessation of challenged conduct (i.e., Daker's placement and 90-day reviews of his Tier II segregation without being afforded due process protections). Nonetheless, the Court addresses Daker's contention his purported "conditional release" from segregation does not render his Petition moot.[5]

### B.    Conditional Release

In support of his claimed exception to the mootness doctrine—being conditionally released—Daker cites Simmons v. United States, 390 U.S. 377 (1967), and other cases he asserts apply Simmons. Doc. 23 at 3–5. In Simmons, the Supreme Court discussed whether a criminal defendant who testifies in support of a Fourth Amendment suppression issue waives his Fifth Amendment right against self-incrimination during later proceedings. The Supreme Court determined it "intolerable" for one constitutional right to be surrendered at the sake of another and held, "[W]hen a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." Simmons, 390 U.S. at 394. However, in Crampton v. Ohio, the Supreme Court questioned the scope of the Simmons reasoning and explained, "Although a defendant may have a right, even of constitutional dimensions, to follow whichever

---

[5]    As noted above, Daker has filed a Supplement. Doc. 29. However, Daker's contention regarding his recent placement in solitary confinement does not satisfy the voluntary cessation doctrine requirements. Daker does not demonstrate Respondent will simply resume the challenged conduct if the Motion to Dismiss is granted and Daker's Petition is denied as moot. And Daker does not show he was placed back in Tier II. Moreover, the fact Daker remained in general population for nearly a year and was removed from general population recently during this case strongly indicates Daker's recent removal from general population was not merely a continuation of the conduct Daker challenges in this action but was the product of new and independent conduct.

11

course he chooses, the Constitution does not by that token always forbid requiring him to choose." 402 U.S. 183, 213 (1971), *reh'g granted*, *vacated on other grounds,* 408 U.S. 941 (1972); see also United States v. Snipes, 611 F.3d 855, 866 (11th Cir. 2010) ("Simmons has never been extended beyond its context.").

In only one of the cases Daker cites does a court cite to and discuss Simmons. In Howard v. Walker, 406 F.3d 114, 119 (2d Cir. 2005), the Second Circuit Court of Appeals discussed Simmons in the context of the Sixth Amendment and determined a criminal defendant should not have to choose between his right to cross-examination and his right to present a defense to criminal charges. Howard does not stand for the proposition Daker claims it does—avoiding placement in segregation at the expense of his religious beliefs. To do so would be to apply Simmons in a completely new way, which this Court is not inclined to do. Snipes, 611 F.3d at 866. The other cases Daker cites as ostensibly extending Simmons provide him with no relief. None of these cases involve discussions on mootness in the context Daker posits or Simmons, even if this case were applicable to Daker's contentions.[6] Moreover, to the extent he attempts to make this argument, Daker points no controlling or persuasive case law—and the Court was unable to find any—that supports Daker's contention "conditional release" from administrative segregation is an exception to the mootness doctrine.

Finally, the Court notes Daker's conditional release argument is not plausible in the context of his procedural due process challenge—the only remaining ground in this case. Daker complains of not being afforded procedural due process protections during his initial placement

---

[6]   A prisoner-plaintiff was not involved in the factual underpinnings of Cochrane v. Quattrochio, 949 F.2d 11 (1st Cir. 1991). Instead, Cochrane involved a non-prisoner visitor who was forced to choose between visitation access and the waiver of the constitutional right to be free from unreasonable searches. Additionally, Cochrane did not involve a question of mootness, which is the issue before this Court on Respondent's Motion to Dismiss.

in and 90-day reviews of his placement in Tier II segregation. He now argues that he was only released from Tier II based on his compliance with the grooming policy—effectively arguing he was forced to choose between religious rights and a general population assignment. At no point does Daker contend he was forced to choose between receiving procedural due process protections—the only remaining ground—and some other right. By Daker's own account, the only "condition" placed on Daker's reassignment was compliance with the grooming policy. Accordingly, Daker has not demonstrated the existence of "conditional release" exception to the mootness doctrine, and, even if he had, he has not shown it would apply to these circumstances.

### C. Capable of Repetition, Yet Evading Review

Daker argues Respondent's challenged conduct is capable of repetition, while evading review, and, therefore, should not be dismissed as moot. Doc. 23 at 6. "To demonstrate that a case is capable of repetition, yet evading review, the plaintiff must show '(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'" Gonsoulin, 2021 WL 4259006, at *3 (quoting Adler v. Duval Cnty Sch. Bd., 112 F.3d 1475, 1477–78 (11th Cir. 1997)). "[A] 'mere physical or theoretical possibility' of repetition is not sufficient; the record must reflect a 'demonstrated probability' that the same controversy will recur involving the same complaining party." In re Tucker, 743 F. App'x 964, 966 (11th Cir. 2018) (citation omitted). "The remote possibility that an event might recur is not enough to overcome mootness, and even a likely recurrence is insufficient if there would be ample opportunity for review at that time." Mehmood v. U. S. Att'y Gen., 808 F. App'x 911, 913 (11th Cir. 2020) (quoting Al Najjar v. Ashcroft, 273 F.3d 1330, 1336 (11th Cir. 2001)).

Daker has not shown Respondent's challenged conduct—placement in and continued placement in Tier II—is too short in duration to litigate. Daker can plainly raise a challenge during a period of assignment to Tier II, which typically lasts at least 90 days, and, in Daker's experience, is usually much longer. Therefore, Daker does not meet the first element of this exception to the mootness doctrine.

Daker also fails to meet the second element of this exception—that there is reasonable expectation Daker will be subjected to the same action again. It may be Daker will be placed in Tier II segregation at Smith State Prison again. Indeed, the record demonstrates Daker has been accused of numerous disciplinary violations during his incarceration and is frequently placed in, or not released from, Tier II due to his behavior. However, Daker was removed from Tier II and remained in general population for almost the entirety of 2021. Daker does not allege his procedural due process rights were violated in any way during that time. To be clear, Daker would need to show he would be subjected to the same action again; specifically, Daker would have to show there is a reasonable expectation he will be placed and held in Tier II without adequate procedural safeguards, such as hearings and 90-day reviews. Daker has not shown made that showing here.

In addition, Daker is currently litigating two other causes of action in this District—one habeas petition and one § 1983 action—in which he alleges his due process have been violated in relation to his placement on Tier II: <u>Daker v. Ward</u>, 6:21-cv-3 (S.D. Ga. Jan. 11, 2021), ECF No. 1; and Pet., <u>Daker v. Adams</u>, 6:20-cv-115 (S.D. Ga. Nov. 30, 2020), ECF No. 1. Any denial as moot of the instant Petition would not eliminate Daker's ability to pursue his claims since he has two other pending cases in this District concerning the same allegations.

Even if Daker is placed back in Tier II in the future, there is nothing indicating Daker will not have ample opportunity for review at that time, either through the appeals process within the prison system, a state habeas challenge, or ultimately in federal court, if necessary, after exhaustion and other procedural requirements are met. See Soliman v. United States ex rel. INS, 269 F.3d 1237, 1243 (11th Cir. 2002) (noting a petitioner's removal from the United States mooted his due process challenge to lengthy detention because no court order requiring his release "could have any effect."); see also Mehmood, 808 F. App'x at 913 (citing Soliman); Walker v. Sec'y of Fla. Dep't of Corr., Case No. 3:15-cv-156, 2018 WL 2197784, at *1 (M.D. Fla. May 14, 2018) (dismissing as moot petitioner's claims because his release and challenges to the status of his confinement left no collateral consequences to consider and collecting cases regarding purely speculative claims of being subjected to potentially the same complained-about conditions cannot revive moot claims).

Daker fails to meet either recognized exception to the mootness doctrine, and his argument for a "conditional release" exception is not supported by any relevant authority. Daker's Petition is moot, and the Court should **GRANT** Respondent's Motion to Dismiss and **DENY as moot** Daker's § 2254 Petition.

II.     **Leave to Appeal *in Forma Pauperis* and Certificate of Appealability**

The Court should also deny Daker leave to appeal *in forma pauperis* and a Certificate of Appealability. Though Daker has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it issues a final order adverse to the applicant." (emphasis supplied); see also

Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a Certificate of Appealability is issued. A Certificate of Appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a Certificate of Appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a Certificate of Appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct

16

to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of Daker's Amended Petition and Respondent's Motion to Dismiss and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** Daker *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DENY as moot** Daker's Petition, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. I also **RECOMMEND** the Court **DENY** Daker *in forma pauperis* status on appeal and a Certificate of Appealability. I **GRANT** Daker's Motions to Expedite. Docs. 28, 30.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to

challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the specificity requirement set out above will not be considered by the District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 12th day of January, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA